## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SARA WECKHORST,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-CV-2255-JAR-GEB** |
| **KANSAS STATE UNIVERSITY,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Kansas State University's ("KSU")
Motion to Join an Additional Party Pursuant to Fed. R. Civ. P. 19(a)(2), or, in the Alternative, to
Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b) (Doc. 14). KSU seeks to have the
students alleged to have sexually assaulted Plaintiff joined to this case, in which Plaintiff asserts
Title IX, Kansas Consumer Protection Act ("KCPA"), and negligence claims. The motion is
fully briefed and the Court is prepared to rule. For the reasons explained below, the Court denies
KSU's motion for joinder.

I.      **Factual Allegations**

The following allegations are taken from Plaintiff's Complaint. On April 26, 2014,
Plaintiff Sara Weckhorst attended a fraternity event at Pillsbury Crossing, a frequent K-State
party location not far from campus. Plaintiff became extremely intoxicated and blacked out.
Her last memory was speaking with a new acquaintance, J.F., a fellow KSU student and the
fraternity's designated driver for the party. J.F. took Plaintiff into his truck and raped her while
about fifteen KSU students looked on, some taking video and photographs. J.F. then transported
Plaintiff to the fraternity house, which is situated about a quarter-mile from campus.

On the drive to the fraternity house, he assaulted her again.  Once at the fraternity house, J.F. took Sara to the "sleep room," which was lined with beds, and raped her again.  When he was finished, J.F. left her there, naked and passed out, and joined other fraternity members in partying downstairs.  Several hours later, at about 10:00 p.m., Plaintiff awoke from blackout, not knowing where she was or how she got there.  A man she did not know was raping her from behind.  Plaintiff later learned the man was J.G., a KSU student and a member of the fraternity.  Still very intoxicated and confused, Plaintiff made her way out of the bed and to a nearby patio.  J.G. followed her to the patio and raped her again.  J.G. informed Plaintiff that two fraternity brothers had penetrated her in the same day.  Plaintiff began to cry uncontrollably, having no recollection of the earlier sexual assaults.  She retrieved her clothing and went home.  Plaintiff later received a text from a KSU student stating "heard you got fucked at the lake," and stating rumors about her.  Plaintiff further alleges that photographs and videos of her were posted on social media and widely spread.

Plaintiff filed a complaint against the two alleged assailants with the KSU Affirmative Action Office.  On May 5, 2014, Plaintiff met with KSU investigator Ameerah McBride of the Office of Affirmative Action, who was charged with enforcing the University's sexual misconduct policy.  Ms. McBride explained that KSU would do nothing about the rapes or the two student-assailants because the rapes occurred off-campus.  Plaintiff also reported the sexual assault to the Riley County Police Department.  Over the course of several months, Plaintiff and her parents met with KSU officials, who explained that KSU would not investigate the alleged assaults.[1]  Plaintiff alleges that KSU suspended the fraternity after Plaintiff reported the presence of alcohol at the party where she was assaulted, but that KSU did not investigate her report of

---

[1] Plaintiff alleges that KSU did, however, inform her that it would investigate comments on social media regarding Plaintiff that were posted after the assaults.

rape or sanction the two alleged assailants.[2]  Plaintiff alleges J.F. and J.G.'s continued presence

on campus has placed her in fear and that the sexual assault was so severe, pervasive, and

offensive as to deny her access to the benefits and opportunities of an education at KSU.  Among

other relief, Plaintiff seeks an injunction "ordering K-State to conduct an investigation and

disciplinary proceedings into" Plaintiff's report of sexual assault.

## II.  Discussion

Fed. R. Civ. P. 19(a) provides, in relevant part:

> (1) ***Required Party.*** A person who is subject to service of process and whose joinder
> will not deprive the court of subject-matter jurisdiction must be joined as a party
> if:
> . . .
> (B) that person claims an interest relating to the subject of the action and is so situated
> that disposing of the action in the person's absence may:
> (i)  as a practical matter impair or impede the person's ability to protect the interest;
> or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple,
> or otherwise inconsistent obligations because of the interest.
> (2) ***Joinder by Court Order.*** If a person has not been joined as required, the court
> must order that the person be made a party.  A person who refuses to join as a
> plaintiff may be made either a defendant or, in a proper case, an involuntary
> plaintiff.

Failure to join a necessary party is a defense under Fed. R. Civ. P. 12(b)(7).

KSU argues that J.F. and J.G. are necessary parties under both Fed. R. Civ. P.

19(a)(1)(B)(i) and 19(a)(1)(B)(ii).  KSU argues that disposition of this action without J.F. and

J.G. would violate their due process liberty and property interests, and would subject KSU to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  Thus, KSU

---

[2]Plaintiff has submitted a Motion for Leave to Amend (Doc. 36) to join fellow KSU student Crystal Stroup as a Plaintiff.  In support of her motion, Plaintiff submitted a proposed First Amended Complaint, in which she alleges that after J.G. was arrested and charged for the sexual assault of Ms. Stroup and Plaintiff, KSU engaged in a threat assessment and expelled him from campus. Doc. 36-1 at 17.  KSU has responded to Plaintiff's motion for leave to amend, in which it asserts that it has not expelled J.G., but instead has suspended him pending further steps under its Critical Incident Response Team process. Doc. 51 at 6.  The Court has previously denied Plaintiff's motion for leave to amend.

moves for joinder of J.F. and J.G. as parties in this case, or for dismissal of the case pursuant to Fed. R. Civ. P. 12(b)(7).

### A.     Interests of Party to be Joined

Pursuant to Rule 19, a person who claims an interest in the litigation is a necessary party where disposing of the action in the person's absence would "as a practical matter impair or impede the person's ability to protect the interest."[3]  KSU argues that resolution of this action in the absence of J.F. and J.G. would impede their ability to protect their interests.  KSU's argument rests on two fundamental assertions.  First, KSU claims that to recover on her Title IX, KCPA, and negligence claims, Plaintiff will have to prove that J.F. and J.G. raped her.  Second, KSU asserts that because Plaintiff seeks injunctive relief ordering KSU to conduct "disciplinary proceedings," Plaintiff seeks an order compelling a pre-ordained finding by KSU that J.F. and J.G. raped her.

KSU further argues that because Plaintiff must prove in this action that J.F. and J.G. raped her, and because the relief Plaintiff seeks would compel a finding by KSU to the same effect, resolution of this action without J.F. and J.G. would impede J.F. and J.G.'s due process interests.  KSU asserts that categorizing someone as a "sex offender" implicates a protected liberty interest where that labeling is accompanied by a "plus" factor that will significantly alter the person's status.[4]  KSU further asserts that J.F. and J.G. have protected property interests in continued education, such that they cannot be expelled or dismissed without due process.[5] Because KSU will be compelled to find J.F. and J.G. rapists in any forthcoming investigation

---

[3] Fed. R. Civ. P. 19(a)(1)(B)(i).

[4] *See Gwinn v. Awmiller*, 354 F.3d 1211, 1216–17 (10th Cir. 2004) (holding that classification of prisoner, who had not committed sex offense, as sex offender and loss of opportunity to earn good time credits implicated a liberty interest).

[5] *See Brown v. Univ. of Kan.*, 16 F. Supp. 3d 1275, 1288 (D. Kan. 2014) (assuming due process-protected interest in continued education).

and disciplinary proceedings, and because Plaintiff will likely be able to employ issue preclusion and use this Court's findings regarding J.F. and J.G.'s liability for rape in those proceedings, KSU argues that resolution of this action in J.F. and J.G.'s absence will impede their due process interests.

The Court first addresses the assertions that underlie KSU's arguments regarding the effects of this litigation on J.F. and J.G.'s interests.  First, the Court is not persuaded that Plaintiff must prove J.F. and J.G. raped her to recover on her Title IX claim.[6]  Certainly, to recover on her Title IX claim Plaintiff must prove KSU had actual knowledge of "harassment that is so severe, pervasive, and objectively offensive as to" deprive access to the educational benefits or opportunities provided by the school.[7]  But Title IX liability does not depend on Plaintiff proving—or the Court making a finding—that J.F. and J.G. committed the sexual assaults alleged in Plaintiff's Complaint.  While Plaintiff's case may involve evidence of J.F. and J.G.'s involvement in the alleged sexual assaults, her claim does not depend on this proof.  Instead, it depends on Plaintiff proving KSU was on notice of, and was deliberately indifferent to, sexual harassment that deprived her educational access.

Second, the Court is not convinced that the relief Plaintiff seeks—injunctive relief ordering KSU to engage in "an investigation and disciplinary proceedings" in response to her report of sexual assault—mandates a pre-ordained finding by KSU in any such proceedings

---

[6]As explained above, KSU also argues that Plaintiff will have to prove J.F. and J.G. raped her to recover on her KCPA and negligence claims.  The Court has previously dismissed these claims. Doc. 52.  Thus, the Court need not consider J.F. and J.G.'s interests as to these claims.

[7]*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)) (listing elements of a Title IX claim).

regarding J.F. and J.G.'s liability.  Nowhere in her Complaint does Plaintiff request that this Court simply order KSU to discipline J.F. and J.G.[8]  Indeed, such relief would be a non-starter.[9]

KSU refers to its Policy Prohibiting Discrimination, Harassment, Sexual Violence, and Procedure for Reviewing Complaints ("Policy").[10]  KSU argues that under this Policy, the "disciplinary" step, referred to in the Policy as "Decision on Sanction if Violation Found," occurs only after a complaint of sexual violence has been reviewed and investigated, and a violation of the Policy has been found.[11]  Thus, according to KSU, Plaintiff's request to order KSU to engage in "disciplinary proceedings" would require it to skip the investigatory and determinative steps, and proceed directly to imposing sanctions.  Plaintiff's relief, however, does not appear to be framed in terms of the steps outlined in KSU's Policy.  Although KSU interprets Plaintiff's request for "disciplinary proceedings" as synonymous with the "Decision on Sanction" step in the Policy, there is no indication in her Complaint that Plaintiff was referring to a particular step of the Policy, rather than referring to "disciplinary proceedings" generally.  Plaintiff's response to KSU's motion also indicates that she does not seek to compel KSU to carry out a particular step of its Policy.[12]  Accordingly, the Court finds that Plaintiff's requested relief will not compel a pre-ordained finding by KSU against J.F. and J.G.

---

[8]*See generally* Doc. 1.  KSU suggests in its initial brief that Plaintiff seeks "an order directing [J.F. and J.G.] be investigated and disciplined by K-State."  Doc. 15 at 5, 13.  This assertion does not accurately reflect the relief sought.  Plaintiff seeks injunctive relief ordering K-State to "conduct an investigation and disciplinary proceedings into Sara's report of sexual assault."  Doc. 1 at 28.  In its Reply, KSU abandons the assertion that Plaintiff asks this Court to order KSU to discipline J.F. and J.G., and correctly states that Plaintiff asks the Court to order KSU to conduct "disciplinary proceedings."

[9]*See Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155 (10th Cir. 2006) (citing *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 965 (D. Kan. 2005)) ("School administrators need not 'engage in particular disciplinary action,' and '[v]ictims do not have a right to seek particular remedial demands.'").

[10]Doc. 31-1.

[11]*Id.* at 6.

[12]Doc. 30 at 10–11, 17 ("Plaintiff seeks as relief to have K-State investigate and initiate disciplinary proceedings against J.F. and J.G., not an order requiring K-State to find J.F. and J.G. responsible.").

Additionally, the Court is satisfied that Plaintiff will not be able to use any findings from this case on the issue of J.F. and J.G.'s liability for sexual assault to a preclusive effect against J.F. and J.G. in any subsequent investigations or proceedings.  Collateral estoppel, or issue preclusion, applies when: (1) the issue decided in the prior adjudication is identical to the one presented, (2) there was a final judgment on the merits, (3) the party to be bound was a party or in privity with a party to the prior case, and (4) the issue in the first case was competently, fully and fairly litigated.[13]  A party invoking issue preclusion must show that all elements listed above are met.[14]  Here, the parties ostensibly to be bound, J.F. and J.G., are not parties or in privity with a party in this case.  Additionally, they will not have a full and fair opportunity to litigate their liability for the alleged sexual assaults because they do not have an incentive to fully litigate their liability in this case, the issue of their liability is not necessary to the judgment here, and they are not parties to this action.[15]  Accordingly, the Court finds that J.F. and J.G.'s interests will not be impeded by issue preclusion as a result of litigating this case in their absence.

While the applicability of issue preclusion, or lack thereof, is certainly instructive in determining whether an absent person's interests will be impeded, it is not the sole determinative factor.[16]  Even if adjudication of the case will not result in a preclusive effect in a "technical

---

[13]*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Moss v. Kopp*, 559 F.3d 1155, 1160–61 (10th Cir. 2009) (citing *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995)).

[14]*Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014).

[15]*See Taylor*, 553 U.S. at 892 ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit."); *Stan Lee Media*, 774 F.3d at 1297 (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683 (10th Cir. 1992)) (listing factors relevant to determination of whether party had full and fair opportunity to litigate, including whether the party had an incentive to litigate the issue fully, and whether the issue is "essential to the judgment").

[16]*See Schulman v. J.P. Morgan Inv. Mgmt., Inc.*, 35 F.3d 799, 806 (3d Cir. 1994) (explaining that impairment of an absent person's rights under Rule 19 "implicates principles of collateral estoppel or issue preclusion"); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 407 (3d Cir. 1993) (finding that "to whatever extent [Rule 19]'s phrase 'as a practical matter impair or impede' has broader meaning than that given by principles of issue preclusion, we think the effect of the federal decision must be more direct and immediate than the effect a judgment" would have on the parties in that case); *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*,

sense," an absent person may be necessary if the litigation will "as a practical matter" impede the person's ability to protect their interest.[17]  KSU argues that J.F. and J.G.'s due process liberty and property interests will be practically impaired if they are not joined in this case.  KSU correctly argues that categorization of a person as a sex offender, without due process, may constitute "stigma plus" and result in deprivation of the person's liberty interest when combined with some other aggravating factor.[18]  But that concern is not implicated here, because J.F. and J.G. will not be labeled sex offenders as a result of disposing of Plaintiff's Title IX claim.  This is not a case that will result in a trial concerning J.F. or J.G.'s liability for sexual assault.  Furthermore, Plaintiff does not request relief in the form of a pre-ordained outcome of any resulting investigation into her report of rape.  Assuming, *arguendo*, the Court grants Plaintiff the relief she seeks and directs KSU to initiate investigatory and disciplinary proceedings in accordance with Title IX, J.F. and J.G. will be afforded the opportunity to respond to any allegations of sexual assault through those proceedings.[19]  Thus, the Court finds that resolution of this case will not impede J.F. and J.G.'s due process liberty and property interests.

KSU contends that Plaintiff will have to prove in this case that J.F. and J.G. assaulted her, and that the relief she seeks amounts to a pre-ordained finding as to J.F. and J.G.'s liability for the alleged assault.  For the reasons outlined above, the Court finds that J.F. and J.G.'s liability is not an issue to be proved in this case, and that the relief Plaintiff seeks does not include a pre-

---

669 F.2d 667, 670–71 (11th Cir. 1982) ("The fact that the judgment in this suit would have no legally preclusive effect as to [the absent person], however, does not end the analysis.").

[17]*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110–11 (1968) (explaining that a court may not "proceed without considering the potential effect on nonparties simply because they are not 'bound' in the technical sense"); *Challenge Homes*, 669 F.2d at 670–71 (summarizing cases in which courts found absent persons necessary under Rule 19(a) despite the lack of preclusion by res judicata or collateral estoppel); *Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375, 398 (E.D. Pa. 2013) (finding that although there would be no preclusive effect, decision in trustee's favor would "directly and immediately affect" the absent homeowners' interests).

[18]*Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004).

[19]*See* Doc. Doc. 31-1 (outlining Policy and steps involved in reviewing complaints of sexual harassment, including providing the respondent of the complaint opportunities to respond).

ordained finding in any subsequent KSU investigation.  Additionally, the Court finds that Plaintiff will not be able to use the findings in this case to a preclusive effect against J.F. and J.G. because they are not parties to this litigation and because they will not have a full and fair opportunity to litigate the issue of their liability in this case.  Finally, the Court finds that resolution of this matter in J.F. and J.G.'s absence will not impede their due process liberty and property interests.  Accordingly, the Court concludes that disposing of this action in J.F. and J.G.'s absence will not, as a practical matter, impair or impede their ability to protect their interests.

**B.      Risk of Incurring Double, Multiple, or Inconsistent Obligations**

KSU also argues that J.F. and J.G.'s absence in this litigation will expose it to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of" J.F. and J.G.'s interests.[20]  First, KSU reasserts that Plaintiff must prove in this case that J.F. and J.G. raped her, and that she seeks an order amounting to a pre-ordained finding to the same effect in any subsequent investigatory and disciplinary proceedings.  KSU argues that this is inconsistent with its obligation to ensure J.F. and J.G.'s due process rights are protected in an administrative review of Plaintiff's report.  According to KSU, J.F. and J.G. could likely obtain an injunction ordering KSU to conduct a *de novo* review of their liability in any investigatory or disciplinary proceedings, while Plaintiff could employ issue preclusion and likely "obtain a ruling to enforce this Court's judgment against K-State by precluding it from reconsidering whether J.F. and J.G. raped her."[21]  Thus, KSU maintains, it will be stuck between a rock and a hard place, forced to choose between disciplining J.F. and J.G. without affording them due process or opening itself to litigation from Plaintiff for failure to enforce this Court's judgment.

---

[20]Fed. R. Civ. P. 19(a)(1)(B)(ii).

[21]Doc. 15 at 15–16; Doc. 31 at 18–19.

The Court recognizes that KSU has an obligation to ensure that its students' due process rights are preserved in conducting investigatory and disciplinary proceedings pursuant to Title IX.  But the Court is not convinced that this obligation is inconsistent with adjudication of this case in J.F. and J.G.'s absence.  The Court has found that J.F. and J.G.'s liability is not an issue necessary to the resolution of this case, and that the relief Plaintiff seeks does not include a pre-ordained finding in any subsequent KSU investigation.[22]  Additionally, the Court has found that Plaintiff will be unable to use issue preclusion to force KSU to reach a particular conclusion in any Title IX investigation.[23]  Although a finding in Plaintiff's favor may result in an order directing KSU to perform investigatory and disciplinary proceedings, it will not result in relief that will in any way control the outcome of those proceedings.  Resolution of this case will not expose KSU to any obligation inconsistent with maintaining the due process rights of its students.

Second, KSU argues that "there is a real possibility that K-State may face an inconsistent judgment based on state law."  KSU focuses heavily on *Yeasin v. University of Kansas*, in which the Kansas Court of Appeals held that the University of Kansas did not have authority to expel a student under Title IX for sexual harassment that occurred online, off campus, and not within a University-sponsored program or activity.[24]  The *Yeasin* court found that to the extent Title IX required the University to discipline off-campus conduct, jurisdiction for such discipline must emanate from the University's Student Code of Conduct.[25]  Because the court interpreted the Student Code to apply only to conduct that occurs on campus or at University-sponsored

---

[22] *See supra* Part II.A.

[23] *Id.*

[24] 360 P.3d 423, 432 (Kan. Ct. App. 2015); *see* Doc. 15 at 16–18; Doc. 31 at 19–21.

[25] *Id.* at 430.

activities, the court found that the University did not have authority to discipline the student for the conduct in that case.[26]

KSU argues that it will encounter the same issue here if it investigates, and ultimately disciplines, J.F. and J.G. for the alleged off-campus sexual assault.  KSU asserts that its Policy limits its investigatory authority to sexual misconduct that occurs "[1] on campus, [2] in the context of K-State-sponsored programs and activities wherever they occur, or [3] off-campus and outside the context of K-state sponsored programs and activities to the extent such 'occurrences relate to discrimination, harassment, or retaliation alleged on campus.'"[27]  KSU argues that because Plaintiff does not allege her sexual assault occurred within any of the three contexts listed above, KSU would be vulnerable to a suit similar to *Yeasin* if it investigated her report. The Court, however, has found that Plaintiff has plausibly alleged sexual assault within a KSU program or activity, which is the second context listed in KSU's policy.[28]  Thus, the Court cannot find that there is a substantial risk that KSU would be open to the same sort of liability described in *Yeasin*, which was premised on an investigation into sexual harassment that occurred off campus and *not* within a program or activity of the University.[29]  Therefore, the Court finds that J.F. and J.G. are not necessary parties based on Fed. R. Civ. P. 19(a)(1)(B)(ii).

## III.  Conclusion

Because the resolution of this action will not as a practical matter impair or impede J.F. and J.G.'s ability to protect their interests, the Court finds that J.F. and J.G. are not persons required to be joined under Fed. R. Civ. P. 19(a)(1)(B)(i).  Additionally, the Court finds that J.F.

---

[26]*Id.*

[27]Doc. 15 at 9 n.4, 17.

[28]Doc. 52.

[29]*Yeasin*, 360 P.3d at 432.

and J.G. are not necessary parties under Fed. R. Civ. P. 19(a)(1)(B)(ii) because disposing of this action in their absence will not subject KSU to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.  Because the Court finds that J.F. and J.G. are not required parties under Rule 19, the Court does not address whether they must be joined or whether this case must be dismissed in their absence.  Accordingly, the Court denies KSU's motion for joinder.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Kansas State University's Motion to Join an Additional Party Pursuant to Fed. R. Civ. P. 19(a)(2), or, in the Alternative, to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b) (Doc. 14) is **denied**.

**IT IS SO ORDERED.**

Dated: March 13, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE