# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SARA WECKHORST,

    Plaintiff,

v.

KANSAS STATE UNIVERSITY,

    Defendant.

Case No. 16-CV-2255-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Sara Weckhorst brought this action against Defendant Kansas State University ("KSU") alleging Title IX, negligence, and Kansas Consumer Protection Act claims based on KSU's failure to adequately respond after Plaintiff, a KSU student, reported she was sexually assaulted by two KSU students at multiple locations in Manhattan, Kansas, including at a KSU fraternity house and KSU fraternity event. Plaintiff moved for leave to amend her Complaint to join as a Plaintiff Crystal Stroup, another KSU student who alleged she was assaulted at an off-campus apartment by one of the same assailants who allegedly assaulted Plaintiff. The Court denied Plaintiff's motion for leave to amend. This matter comes before the Court on Plaintiff's Motion for Partial Reconsideration of the Court's Order Finding the Proposed Amendment to Join Crystal Stroup Futile or, In the Alternative, For Relief From a Final Order Pursuant to Fed. R. Civ. P. 60(b) (Doc. 65). The motion is fully briefed and the Court is prepared to rule. For the reasons explained more fully below, the Court denies Plaintiff's motion.

**I.    Procedural Background and Factual Allegations**

Plaintiff alleged in her original Complaint that KSU was deliberately indifferent to her report that on April 24, 2014, she was sexually assaulted at a KSU fraternity event and fraternity house and at other locations in Manhattan, Kansas, by two KSU students, J.F. and J.G.

Specifically, Plaintiff alleged that KSU refused to investigate her report of sexual assault based on KSU's view that it need not investigate such instances at the off-campus KSU fraternity. KSU filed a motion to dismiss, in which it argued Plaintiff failed to state a plausible Title IX claim because KSU did not have substantial control over the context of the alleged assaults, and because its alleged deliberate indifference did not cause "further harassment" of Plaintiff. Plaintiff responded to the motion, and also filed a motion for leave to amend her Complaint.

Plaintiff moved for leave to amend her Complaint to join as a Plaintiff Crystal Stroup, another KSU student. Plaintiff and Ms. Stroup alleged in their proposed First Amended Complaint ("FAC")[1] that J.G., one of the students who allegedly assaulted Plaintiff, sexually assaulted Ms. Stroup at University Crossing, an off-campus apartment, on October 6, 2015. The proposed FAC alleged that University Crossing is a "major rental facility for K-State students" across the street from KSU that "matches students looking to live together based on shared interest, majors, etc." and provides "shuttles to and from the center of campus."[2] After her alleged sexual assault, Ms. Stroup learned about K-State's stance against investigating sexual assaults involving students that occur off campus. This dissuaded her from immediately reporting the assault to KSU, and thus she did not report the alleged sexual assault to KSU for many months, during which time she suffered actual and threatened direct contacts with J.G. on KSU's campus.

Ms. Stroup eventually reported the alleged sexual assault to KSU in spring 2016 after KSU placed her on academic probation. In response to her report, KSU did not inform Ms.

---

[1] While Plaintiff asserts Ms. Stroup was not a party at the time of the motion for leave to amend, Ms. Stroup was represented by counsel who effectively entered their appearance on her behalf when they filed the proposed FAC. Doc. 46 at 13–14. Thus, the Court considers the proposed FAC as having been submitted by both Plaintiff and Ms. Stroup.

[2] Doc. 36-1 ¶ 51.

Stroup of KSU's sexual misconduct or Title IX policies, and did not inform her of the option to file a complaint against J.G. with the KSU Office of Institutional Equity. In July 2016, J.G. was arrested for the sexual assault of Ms. Stroup, and was criminally charged in Riley County with the sexual assault of both Ms. Stroup and Plaintiff. That same month, after learning of J.G.'s arrest, KSU engaged in a threat assessment and expelled J.G. from campus.

The proposed FAC asserted Title IX and negligence claims on behalf of Ms. Stroup, and characterized Ms. Stroup's proposed Title IX claim as alleging "[d]eliberate [i]ndifference [p]rior to Plaintiff's [r]ape [a]s to Crystal Stroup."[3] Plaintiff and Ms. Stroup alleged that KSU's deliberate indifference following Plaintiff's report of sexual assault "created a climate whereby such misconduct was tolerated, thus encouraging misconduct and proximately causing injury to Crystal."[4] They alleged in support of Ms. Stroup's negligence claim that KSU breached its duty to protect her from certain dangers, including reasonably foreseeable sexual violence, and that this breach proximately caused her injuries.

The Court issued a Memorandum and Order on March 14, 2017, in which it granted in part and denied in part Defendant's motion to dismiss.[5] The Court found that Plaintiff stated a plausible Title IX claim because she presented factual allegations that KSU (1) had substantial control over the assailants and the context of several of Plaintiff's assaults at a KSU fraternity and fraternity event, and (2) was deliberately indifferent to her report of sexual assault. The Court, however, granted Defendant's motion as to Plaintiff's negligence claim, finding that Plaintiff had not alleged sufficient facts to support a plausible claim that a special relationship

---

[3]*Id.* at 39. Although the proposed FAC alleges deliberate indifference "[p]rior to Plaintiff's [r]ape," the context of the proposed FAC suggests that it alleges deliberate indifference prior to Ms. Stroup's alleged sexual assault, rather than Plaintiff's. *See id.* ¶ 137 ("K-State had direct notice and actual knowledge of the report of rape against J.G. committed against K-State student Sara Weckhorst prior to the rape of Crystal.").

[4]*Id.* ¶ 141.

[5]Doc. 53.

existed between her and KSU such that KSU had a duty to protect her against the tortious acts of the third-party students, J.F. and J.G. The Court also denied Plaintiff's motion for leave to amend to join Ms. Stroup as a Plaintiff. The Court found Ms. Stroup's proposed Title IX claim futile because she presented no factual allegations that the harassment complained of—her sexual assault by J.G. at University Crossing—occurred within a context over which KSU had substantial control. The Court also found that Ms. Stroup's negligence claim was futile for the same reasons the Court dismissed Plaintiff's negligence claim.

## II.     Legal Standards

D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders, while Fed. R. Civ. P. 59 and 60 govern motions to reconsider dispositive orders.[6] Whether orders on motions to amend are dispositive is an unsettled issue.[7] Motions to amend are generally considered non-dispositive because they do not dispose of a claim or defense.[8] When an "order denying a motion to amend, however, effectively removes a defense or claim from the case, it may well be a dispositive ruling."[9]

Here, the Court's denial of the motion to amend did not "remove a defense or claim from the case."[10] Indeed, Plaintiff emphatically argues that Ms. Stroup was not a party to this action at

---

[6] D. Kan. Rule 7.3; *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

[7] *See Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002) ("Which standard to apply is not as clear with respect to the magistrate judge's order denying in part the plaintiff's motion to amend."); *Chavez v. Hatterman*, No. 06-cv-2525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (recognizing split of authority on whether to treat motions to amend dispositive).

[8] *Cuenca*, 205 F. Supp. 2d at 1228 (citing *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000)).

[9] *Id.*

[10] *See Phelps v. Hamilton*, 122 F.3d 1309, 1323–24 (10th Cir. 1997) ("we have held that a motion will be considered under Rule 59(e) 'when it involves reconsideration of matters properly encompassed in a decision on the merits.'") (quoting *Martinez v. Sullivan*, 874 F.2d 751, 753 (10th Cir. 1989)); *see also Johnson v. Simonton Bldg. Props., Inc.*, No. 08-2198, 2009 WL 902409, at *2 (D. Kan. Mar. 31, 2009) (finding that order of partial dismissal was dispositive because it terminated some of plaintiffs' claims).

the time the Court made its futility ruling.[11] Thus, her proposed claims were not in play at the time of the Court's ruling. Accordingly, because the Court's order did not dispose of an existing claim of a party, the Court construes the order as non-dispositive, and the Court proceeds to consider Plaintiff's motion under D. Kan. Rule 7.3.[12]

Under D. Kan. Rule 7.3, grounds warranting a motion to reconsider include: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[13] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[14] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[15] A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider.[16] Whether to grant a motion to reconsider is left to the Court's discretion.[17]

---

[11]Doc. 65 at 2, 6; Doc. 70 at 1, 4.

[12]Plaintiff briefly argues for relief from the Court's order pursuant to Fed. R. Civ. P. 60(b) "[b]ased on the same analysis" in support of her arguments for reconsideration under D. Kan. Rule 7.3. Doc. 63 at 23. Because the Court proceeds under D. Kan. Rule 7.3(b), and because Plaintiff's arguments under Fed. R. Civ. P. 60(b) mirror her arguments under D. Kan. Rule 7.3, the Court does not address Plaintiff's argument for identical relief under Fed. R. Civ. P. 60(b).

[13]D. Kan. Rule 7.3(b).

[14]*Servants of Paracelete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[15]*Steele v. Young,* 11 F.3d 1518, 1520 n.1 (10th Cir.1993); *see also* Charles Alan Wright, et al., Federal Practice & Procedure: Civil 2d § 2810.1 ("The Rule 59(e) motion may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

[16]*Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, No. 11-2059-KHV, 2013 WL 139750, at *1–2 (D. Kan. Jan. 10, 2013) (citing *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 370 F. Supp. 2d 1130, 1132 (D. Kan. 2005), *aff'd*, 191 F. App'x 822 (10th Cir. 2006)).

[17]*Coffeyville*, 748 F. Supp. 2d at 1264 (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

### III. Discussion

Plaintiff seeks reconsideration of the Court's finding of futility as to Ms. Stroup's claims, arguing that the Court's finding was "cursory," "puzzling," and "premature."[18] Plaintiff asserts she is not seeking reconsideration of the Court's denial of her motion for leave to amend and Ms. Stroup's joinder, but simply reconsideration of its "assessment of futility in order to allow Crystal to proceed with her own independent lawsuit."[19] Plaintiff points to several perceived faults in the Court's ruling, which she organizes under two main arguments. First, she argues the Court's ruling will result in manifest injustice to Ms. Stroup. Second, Plaintiff argues that the Court committed clear error.

#### A. Manifest Injustice

Plaintiff makes two apparent arguments in support of her assertion that reconsideration is necessary to prevent manifest injustice. The Court addresses each argument in turn.

First, Plaintiff contends the Court's futility ruling was premature. She asserts that neither party argued the merits of Ms. Stroup's claims before the Court ruled on futility. Plaintiff also points to the following statement KSU made in responding to Plaintiff's motion for leave to amend: "because Ms. Stroup has not entered an appearance and has yet to file any claims in the first instance, it is premature for K-State to address the merits of her claims."[20] Thus, Plaintiff asserts that the "Court prematurely ruled on the merits of Crystal's proposed claims, before they

---

[18] Doc. 63 at 2–3.

[19] *Id.* at 3. Defendant questions Plaintiff's standing to bring the instant motion, arguing that if Plaintiff is the only party in this case, "it is difficult to envision how Ms. Weckhorst would have standing to attempt to salvage Ms. Stroup's claims." Doc. 67 at 1 n.1. Plaintiff, however, was the party who brought the motion for leave to amend, and thus the Court finds that she has standing to move for reconsideration of the Court's order denying that motion.

[20] Doc. 39 at 20.

were even filed and before she was a party, without allowing her a full and fair opportunity to present or brief the issues."[21]

At the outset, the Court notes that Plaintiff's motion to amend was fully briefed, and thus she had a full opportunity to brief issues, including futility, relevant to a motion to amend brought pursuant to Fed. R. Civ. P. 15(a)(2).[22] In fact, both parties addressed futility in briefing Plaintiff's motion for leave to amend.[23] Plaintiff maintains that KSU focused only on the futility of the proposed amendments related Plaintiff's claims, rather than the futility of Ms. Stroup's proposed claims. But contrary to Plaintiff's assertion, KSU made arguments as to whether Ms. Stroup's alleged sexual assault occurred within a context over which KSU had substantial control.[24] KSU also made arguments as to the futility of Ms. Stroup's proposed negligence claims.[25] Furthermore, although Plaintiff maintains that Ms. Stroup was not a party at the time of the Court's futility determination, she emphasized in briefing her motion for leave to amend that counsel had effectively entered their appearances on behalf of Ms. Stroup in filing the proposed FAC.[26] For these reasons, the Court finds that Ms. Stroup, who was represented by counsel in this case, had a full opportunity to address the futility of her proposed claims in briefing her motion for leave to amend.

---

[21] Doc. 63 at 10–11.

[22] Doc. 53 at 1 ("The parties have fully briefed the motions.").

[23] Doc. 39 at 16–25 (section of Defendant's Response entitled "Amendments arising from Ms. Stroup's alleged rape are untimely and futile"); Doc. 46 at 22 (section of Plaintiff's Reply entitled "K-State's Argument that the Amendments are Futile Should be Rejected").

[24] *See* Doc. 39 at 17–20 ("K-State notes that, according to Ms. Weckhorst, Ms. Stroup was raped by J.G. at an off-campus apartment complex that K-State does not own. If this is true, then Ms. Stroup's alleged rape did not occur in K-State's substantial control, as cases like *Roe* and *Samuelson* make clear, and any Title IX claim would fail.").

[25] Doc. 39 at 18 n.11, 20 & n.13.

[26] Doc. 46 at 13–14 ("The First Amended Complaint is the initial pleading made on behalf of Crystal and satisfies the formal entry of appearance requirements.").

Additionally, the Court finds that its ruling on futility was not premature because futility of amendment is properly before a court on a Rule 15(a)(2) motion for leave to amend. Indeed, it is well settled that in ruling on a motion for leave to amend, courts are instructed to "freely give leave when justice so requires," and to deny leave to amend only when an apparent reason, "such as . . . futility of amendment," exists.[27] Thus, "a court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason."[28] These principles make clear that the proper forum for analyzing futility of amendment is at the motion for leave to amend stage, rather than after the Court has granted leave to amend and the time for analyzing futility has passed. Where, as here, a motion for leave to amend is properly before the Court pursuant to Fed. R. Civ. P. 15(a)(2), the Court finds that analysis of futility is not premature. To the contrary, the Court is instructed to analyze futility and other factors in exercising its discretion to grant or deny leave to amend.[29]

Here, at the time of the Court's futility determination, Ms. Stroup had "filed a proposed complaint expressing her intent to vindicate her rights,"[30] she was represented by counsel who had effectively entered their appearance and briefed the motion for leave to amend, and the parties had briefed the issue of futility. Additionally, the Court had an obligation to screen Ms. Stroup's proposed claims for futility in ruling on the Rule 15(a)(2) motion for leave to amend.

---

[27]Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

[28]*Bradshaw v. Lappin*, 484 F. App'x 217, 225 (10th Cir. 2012) (citation omitted).

[29]*See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)); *see Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (citing *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.")).

[30]Doc. 46 at 14 n.13.

Accordingly, the Court finds that futility of amendment was an issue properly before the Court, and therefore it was not manifestly unjust for the Court to address this issue.

Second, Plaintiff argues the Court's ruling will cause manifest injustice because the ruling "has potentially grave consequences for Crystal."[31] Plaintiff acknowledges that preclusion likely would not apply in a future case Ms. Stroup might bring, but she seeks reconsideration so Ms. Stroup "may vindicate her civil rights without impediment."[32] To the extent Ms. Stroup was not a party in this case, the Court agrees that preclusion would not apply.[33] But the Court is not in a position to rule on the preclusive effect of its ruling in a hypothetical future case. In making its futility determination, the Court was not ruling on claims Ms. Stroup might bring in any subsequent litigation. Rather, the Court simply found that Ms. Stroup's proposed claims, as plead, were futile. Plaintiff has not made a showing that the Court's futility determination in this case will have a preclusive effect or otherwise prevent Ms. Stroup from vindicating her civil rights. Accordingly, the Court finds that reconsideration is not necessary to prevent manifest injustice.

**B.     Clear Error**

**1.     Futility Standard**

Plaintiff argues that the Court committed clear error in analyzing whether Ms. Stroup's proposed claims were "futile," rather than analyzing whether her proposed claims were "*clearly* futile."[34] Plaintiff points to one case in this District to support her argument that "clearly futile"

---

[31] Doc. 63 at 12.

[32] *Id.*

[33] *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100–05 (10th Cir. 2007) (explaining that claim preclusion and issue preclusion both require that the parties to the subsequent litigation are the same as in the previous litigation).

[34] Doc. 63 at 9.

is the proper standard in evaluating a proposed claim on a motion for leave to amend.[35] Several cases in this District have indeed employed the "clearly futile" standard in evaluating proposed amendments.[36] These cases rely on a treatise regarding leave to amend for use of the "clearly futile" standard, and they do not suggest that the "clearly futile" standard is materially different than the typical "futility" standard.[37] The seminal Supreme Court case interpreting Rule 15(a)(2) standards for leave to amend, *Foman v. Davis*, refers to "futility of amendment," rather than "clear futility."[38] Additionally, a large number (if not a large majority) of the cases in this District and the Tenth Circuit employ the traditional "futility" standard, rather than the "clearly futile" standard.[39]

The Court certainly agrees that futility should be clear before denying leave to amend, as Fed. R. Civ. P. 15(a)(2) counsels courts to "freely give leave when justice so requires." But the Court finds that it did not commit clear error by following the many cases in this District and in the Tenth Circuit in determining whether Ms. Stroup's proposed amendments were "futile," as opposed to "clearly futile." Assuming arguendo that "clearly futile" is the proper standard and that there is a difference of degree between the "futile" and "clearly futile" standards, the Court finds that this standard was met because Ms. Stroup's proposed Title IX and negligence claims,

---

[35] *See C.T. v. Liberal Sch. Dist.*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2007 WL 837275, at *1 (D. Kan. Mar. 15, 2007) (citing *Stewart v. Bd. of Comm'rs for Shawnee Cty.*, 216 F.R.D. 662, 664 (D. Kan. 2003)) ("If a proposed amendment is not clearly futile, then denial of leave to amend is improper.") (internal quotations omitted).

[36] *See, id.*; *Engle v. Trego Cty. Juvenile Ctr.*, No. 09-2459, 2010 WL 4180287, at *5 (D. Kan. Oct. 20, 2010) (citing *Stewart*, 216 F.R.D. at 664); *Zack v. Hartford Life & Accident Ins. Co.*, No. 01-2430-JAR-JPO, 2002 WL 538851, at *2 (D. Kan. Mar. 20, 2002)).

[37] *See Stewart*, 216 F.R.D. at 664 (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1487, at 637–43 & n. 23 (2d ed.1990)); *Zack*, 2002 WL 538851, at *2 (citing same).

[38] 371 U.S. 178, 182 (1962).

[39] *See, e.g.*, *Fisher v. Koopman*, -- F. App'x --, No. 16-1335, 2017 WL 2258357, at *2 (10th Cir. May 23, 2017) (citation omitted); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (citing *Foman*, 371 U.S. 178); *Duncan v. Mgr., Dept. of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005); *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002).

as plead, clearly would not survive a motion to dismiss for the reasons explained in the Court's Memorandum and Order.[40] The Court therefore finds that it did not commit clear error in applying the standard of "futility" set forth in its Memorandum and Order.

### 2. Title IX Futility Analysis

Plaintiff also argues the Court committed clear error in conducting its futility analysis of Ms. Stroup's proposed Title IX claim. Plaintiff notes that the Court based its analysis of Ms. Stroup's Title IX claim on the same legal framework it used to analyze Plaintiff's claim. Plaintiff, however, argues that while she alleged a claim of *post*-assault deliberate indifference, Ms. Stroup proposed a claim of *pre*-assault deliberate indifference. Thus, Plaintiff contends that "Crystal's claims raise a different theory of Title IX liability and require a different legal analysis."[41] The Court recognizes that Ms. Stroup's proposed claim differed from Plaintiff's with respect to when KSU was allegedly deliberately different. But Plaintiff has not shown how the claims are legally distinct as to the material question of whether KSU had substantial control over the harassment complained of.[42] As the Supreme Court has explained, Title IX's "plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs."[43] Whether she alleged a pre-assault or post-assault claim of deliberate indifference under Title IX, Ms. Stroup's claim would be plausible only if the alleged harassment she suffered occurred within a "program or activity"

---

[40] *See* Doc. 53 at 41–42.

[41] Doc. 63 at 14.

[42] The Court made its futility determination not on a finding that Ms. Stroup had failed to properly allege deliberate indifference, but that she had not alleged KSU had substantial control over the context of her sexual assault. Doc. 53 at 41–42.

[43] *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644 (1999).

11

of KSU or within a context over which KSU had "substantial control."⁴⁴ Accordingly, the Court finds that it did not commit clear error in determining whether Plaintiff alleged she suffered discrimination or harassment within a context over which KSU exercised substantial control.

Plaintiff argues that even if she was required to satisfy the "substantial control" element, she presented plausible allegations that KSU maintained substantial control over the harasser and the context of the harassment in three ways.⁴⁵ First, she contends that a strong nexus exists between KSU and the context of Ms. Stroup's alleged assault, as well as the "subsequent hostile environment" Ms. Stroup faced on campus following her assault. Second, Plaintiff argues KSU had control over the context of the "known harassment," that is, the alleged sexual assaults of Plaintiff. Finally, she claims KSU had control based on an "official policy" theory of liability, as recognized by the Tenth Circuit in *Simpson v. University of Colorado Boulder*.⁴⁶

Plaintiff urges that a strong nexus exists between the alleged assault at University Crossing and KSU. Plaintiff points to allegations in Ms. Stroup's proposed claim in support of this supposed nexus, including that University Crossing houses hundreds of KSU students, that University Crossing is located directly across from the KSU campus, and that it provides shuttles to and from campus. But while these allegations may suggest some proximity of University

---

⁴⁴*See id.* at 644–45 (explaining that Title IX damages liability attaches only where "the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs"); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (quoting 20 U.S.C. § 1681(a)) ("Title IX provides that '[n]o person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal assistance.'"); *C.R.K. v. U.S.D. 260*, 176 F. Supp. 2d 1145, 1162 (D. Kan. 2001) (citing *Davis*, 526 U.S. at 645) (explaining that Title IX "liability is limited to circumstances where the school exercises substantial control over both the harasser and the context in which known harassment occurs").

⁴⁵Plaintiff devotes a portion of her briefing to whether KSU had substantial control over J.G., the student alleged to have assaulted Ms. Stroup. Doc. 65 at 11–13. The Court, however, did not find Ms. Stroup's proposed allegations futile on the issue of whether KSU had substantial control over the alleged *harasser*. Rather, the Court's futility finding centered on Ms. Stroup's lack of allegations that KSU had substantial control over the *context* of the assault. Because the Court did not find Ms. Stroup's proposed allegations as to KSU's control over J.G. futile, the Court need not address her arguments on this issue.

⁴⁶500 F.3d 1170, 1178 (10th Cir. 2007); *see also Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 808 (M.D. Tenn. 2016) (holding that plaintiff alleged a plausible "*Simpson* theory of liability" to support Title IX claim based on sexual assault at off-campus apartment).

Crossing to KSU, they do not demonstrate that KSU had any control over the off-campus apartment complex, let alone "substantial control."

Plaintiff cites *Ross v. University of Tulsa*, in which the Tenth Circuit rejected the defendant university's argument that it lacked substantial control over the context of the plaintiff's sexual assault, which occurred in a private apartment on campus.[47] The court found that a reasonable fact-finder could conclude the university had substantial control over the context of the assault because the university exerted disciplinary control over students for misconduct that occurs in private apartments on campus, and because the university could have prevented the plaintiff's on-campus assault by barring the assailant from campus based on a previous on-campus assault.[48] Plaintiff argues the "substantial control" analysis in *Ross* applies equally here because KSU could have removed J.G. from campus following Plaintiff's alleged sexual assault, thereby preventing Ms. Stroup's alleged assault. But unlike the sexual assault at the *on-campus* apartment at issue in *Ross*, here Ms. Stroup's alleged sexual assault occurred at an *off-campus* apartment complex. Ms. Stroup did not allege KSU had disciplinary authority over conduct that occurs at University Crossing. Furthermore, she did not allege any facts indicating that J.G. would have been prohibited from living at or visiting the off-campus apartment complex if he had been expelled from KSU. Without any allegations that KSU had substantial control over University Crossing, which was the context of Ms. Stroup's alleged sexual assault, Ms. Stroup's proposed Title IX claim is not plausible.

Plaintiff also argues that KSU had control of the "subsequent hostile environment context which Crystal faced on K-State's campus, as she was forced to continue sharing it with the

---

[47]859 F.3d 1280, 1287 n.5 (10th Cir. 2017).
[48]*Id.*

rapist" and "regularly encountered him on campus."[49] But this was not the harassment Ms. Stroup alleged was the result of KSU's deliberate indifference. Rather, Ms. Stroup alleged that "as a direct and proximate result of K-State's actions, inactions, and deliberate indifference, Crystal was sexually assaulted by J.G."[50] Importantly, Ms. Stroup couched her proposed claim as one of "[d]eliberate [i]ndifference [p]rior to Plaintiff's [r]ape."[51] Thus, the harassment complained of, which was subject to the "substantial control" requirement, was Ms. Stroup's alleged sexual assault at University Crossing. Plaintiff's arguments regarding post-assault harassment and deliberate indifference do not provide a basis for reconsideration.

Plaintiff's argument that Ms. Stroup satisfied the "substantial control" element based on allegations that KSU had substantial control over the context of Plaintiff's own sexual assault is similarly unavailing. As explained above, Title IX's "plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs."[52] Although Ms. Stroup plausibly alleged KSU had substantial control over the prior assault of Plaintiff, she did not allege that KSU had control over the context of her own assault at University Crossing. In the absence of any allegations that KSU had control over the context of *Ms. Stroup's* sexual assault, Ms. Stroup cannot maintain a Title IX claim against KSU. Holding otherwise would, contrary to the plain language of Title

---

[49]Doc. 63 at 13.

[50]Doc. 36-1 at 41 ("As a result of K-State's deliberate indifference, Crystal was subjected to harassment and discrimination, including sexual assault and rape by J.G.").

[51]*Id.* at 39–41. Plaintiff also maintains that Ms. Stroup's claim was brought pursuant to a "pre-assault" deliberate indifference theory, and that the resulting harassment was Ms. Stroup's sexual assault. Doc. 63 at 10–12 ("It was K-State's deliberate indifference to *Sara's* rape, which this Court found was sufficiently pled to be under K-State's substantial control, which caused Crystal's rape.") (emphasis in original).

[52]*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644 (1999).

IX, subject funding recipients to liability for harassment that occurs outside of "education program[s] or activit[ies] receiving Federal assistance."[53]

Finally, Plaintiff argues KSU exercised substantial control over the context of Ms. Stroup's alleged sexual assault based on "an official policy of refusing to investigate any sexual violence at its fraternities or elsewhere off-campus."[54] This theory arises from *Simpson v. University of Colorado Boulder*,[55] a case that this Court previously discussed in its Memorandum and Order.[56] In *Simpson*, the Tenth Circuit found the plaintiffs had presented sufficient evidence that the university exercised "control over the harasser and the environment in which the harassment occur[ed]," because the sexual assaults at issue, which occurred at a private apartment off campus, were the result of an official policy by the university's football program to encourage female students to show recruits "a good time."[57] Ms. Stroup's proposed claims do not rest on an "official policy" theory similar to that recognized in *Simpson*. Unlike in *Simpson*, here KSU did not have an official policy that affirmatively encouraged students to engage in conduct off campus that could lead to sexual harassment or assault.[58] Also unlike *Simpson*, neither J.G. nor Ms. Stroup were allegedly acting at the direction of KSU, and the gathering that precipitated the alleged assault was not facilitated by a KSU program. Accordingly, the Court

---

[53]*See id.*

[54]Doc. 63 at 15.

[55]500 F.3d 1170, 1178 (10th Cir. 2007).

[56]Doc. 53 at 16–17.

[57]*Simpson*, 500 F.3d at 1178–85.

[58]Plaintiff argues that KSU's alleged policy of indifference encouraged sexual assaults by students, including the alleged assault of Ms. Stroup. But while KSU may have arguably enabled harassment through its alleged policy of indifference, Plaintiff did not allege an official policy affirmatively encouraging conduct that could constitute harassment, like in *Simpson*. *Id.* at 1177 ("[T]he gist of the complaint is that CU sanctioned, supported, even funded, a program (showing recruits a 'good time') that, without proper control, would encourage young men to engage in opprobrious acts."); *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 807–08 (M.D. Tenn. 2016) (holding that plaintiff presented a plausible "*Simpson* theory of liability" based on allegations of official university practices "encouraging and condoning similar types of events to entertain athletes and recruits, handling athlete discipline, housing students, and lack of sexual harassment training, among others").

finds that Ms. Stroup did not state a plausible claim of Title IX liability premised on an "official policy" in her proposed FAC.

For the reasons explained above, the Court finds that it did not commit clear error in finding Ms. Stroup's proposed Title IX claim futile.

### 3. Negligence Futility Analysis

Finally, Plaintiff argues the Court committed clear error in finding Ms. Stroup's proposed negligence claim futile. Plaintiff alleged in her own negligence claim that KSU breached its duty to regulate, warn, or protect her from sexual assaults at a KSU fraternity party and fraternity house. In analyzing KSU's motion to dismiss Plaintiff's negligence claim, the Court recognized the general rule that "an actor has no duty to control the conduct of a third person to prevent that person from causing harm to others unless a 'special relationship' exists between the actor and the third party or the actor and the injured party."[59] The Court also cited the Kansas Supreme Court's holding in *Nero v. Kansas State University* that the "university-student relationship does not in and of itself impose a duty upon universities to protect students from the actions of fellow students or third parties. The in loco parentis doctrine is outmoded and inconsistent with the reality of contemporary college life."[60] Pursuant to *Nero* and its progeny, the Court found that the university-student relationships between KSU, Plaintiff, and the alleged assailants did not give rise to a legal duty owed to Plaintiff. Accordingly, the Court granted KSU's motion to dismiss Plaintiff's negligence claim.

In the proposed FAC, Ms. Stroup proposed a negligence claim that largely paralleled Plaintiff's, alleging that KSU breached its duty to protect her from certain dangers, including

---

[59]Doc. 53 at 37 (quoting *Nero v. Kan. State Univ.*, 861 P.2d 768, 772 (Kan. 1993)).

[60]*Id.* (quoting *Nero*, 861 P.2d at 773–78).

reasonably foreseeable sexual violence.[61] The Court found this proposed claim futile because "Ms. Stroup's negligence claim suffers the same shortcomings as Plaintiff's negligence claim, i.e., she does not present plausible allegations that reflect the existence of a special relationship such that KSU owed a duty to protect her from harms caused by a third party."[62]

Plaintiff argues the Court's futility determination constituted clear error because KSU owed a duty to Ms. Stroup to "prevent the alleged assault." Plaintiff points to the following passage from *Nero*:

> We emphasize that a university is not an insurer of the safety of its students. Nonetheless, a university has a duty of reasonable care to protect a student against certain dangers, including criminal actions against a student by another student or a third party if the criminal act is reasonably foreseeable and within the university's control.[63]

The court in *Nero* made the statement above in the context of discussing whether the landlord-tenant relationship could give rise to a duty to protect its students from harms caused by other students and third parties.[64] The court did not make this statement in the context of discussing whether the university-student relationship generally gives rise to such a duty. To the contrary, the court held "the university-student relationship does not in and of itself impose a duty upon universities to protect students from the actions of fellow students or third parties."[65]

The Court recognizes that in the situation where a university is acting as a landlord, a duty may arise to protect students from certain actions by other students. But here, neither

---

[61]Doc. 36-1 at 41–43.

[62]Doc. 53 at 42. Notably, although the Court's futility analysis of Ms. Stroup's proposed negligence claim relied on the same analysis it employed in ruling on Plaintiff's negligence claim, Plaintiff does not move for reconsideration of the Court's ruling on her own negligence claim.

[63]*Nero*, 861 P.2d at 780.

[64]*See id.*

[65]*Id.* at 773.

Plaintiff nor Ms. Stroup alleged KSU was acting as a landlord.[66] In fact, Ms. Stroup's allegations make clear that University Crossing, rather than KSU, was her landlord. Ms. Stroup did not present allegations that would support a finding that KSU owed a duty similar to that attributable to universities acting as landlords. Because Ms. Stroup alleged nothing more than the university-student relationship in this context, the Court finds this relationship "in and of itself" did not override the general rule that universities do not owe a duty to protect their students from the tortious acts of other students or third parties.[67] However, even if KSU owed Ms. Stroup a duty to protect her from criminal acts of other students that were "reasonably foreseeable and within the university's control," the Court finds that Ms. Stroup did not allege a criminal act that was "within the university's control," as the alleged sexual assault occurred off campus and not in connection with any KSU event or program. For these reasons, the Court finds that it did not commit clear error in finding Ms. Stroup's proposed negligence claim futile.

IV.     Conclusion

Plaintiff asserts that the Court's ruling on futility will cause manifest injustice, and that the Court committed clear error in its futility analysis. Many of her arguments either were made or could have been made at the time Plaintiff and Ms. Stroup moved for leave to amend the Complaint. Nonetheless, the Court has addressed each argument above. First, Ms. Stroup was given ample opportunity to argue the perceived futility of her claims at the time Plaintiff moved for leave to amend, and she did so. Second, the Court's ruling on futility was not premature, as the parties had addressed futility and the Court had an obligation to address futility, to the extent it existed, in ruling on a motion for leave to amend pursuant to Fed. R. Civ. P. 15(a)(2). Third,

---

[66]*See* Doc. 53 at 38 ("[T]o the extent Plaintiff asserts the existence of a duty premised on a landlord-tenant relationship similar to that at issue in *Nero*, this argument is also foreclosed, as KSU is not a landlord or owner of the fraternity house, and the fraternity house is not on KSU property.").

[67]*See Nero*, 861 P.2d at 778.

Plaintiff has not shown that Ms. Stroup will suffer manifest injustice in the form of issue or claim preclusion as a result of the Court's ruling. Fourth, the Court was not obligated to use the "clearly futile" standard, and to the extent such a standard was required, Ms. Stroup's proposed claims were "clearly futile." Fifth, the Court did not commit clear error in finding Ms. Stroup's proposed Title IX claim futile, as Ms. Stroup did not allege KSU had "substantial control" over the context of the sexual assault. Finally, the Court did not commit clear error in finding Ms. Stroup's proposed negligence claim futile, as Ms. Stroup did not allege facts that would give rise to a finding that KSU owed her a duty in this context. Because Plaintiff has failed to demonstrate manifest injustice or clear error, the Court denies her motion for reconsideration.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Sara Weckhorst's Motion for Partial Reconsideration of the Court's Order Finding the Proposed Amendment to Join Crystal Stroup Futile or, In the Alternative, For Relief From a Final Order Pursuant to Fed. R. Civ. P. 60(b) (Doc. 65) is **denied**.

**IT IS SO ORDERED.**

Dated: August 23, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE